FRANK L. MAGAR, Respondent, *v.* STODDARD HAMMOND et al., Appellants.    '

CONTRIBUTORY NEGLIGENCE — TRESPASSER UPON PRIVATE PARK, WHO HAS KNOWLEDGE THAT FIRE ARMS ARE USED TO WARD OFF POACHERS, CANNOT RECOVER FOR INJURIES RECEIVED, WHILE POACHING UPON SUCH PRIVATE PARK, FROM SHOT NEGLIGENTLY FIRED BY NIGHT WATCHMAN.
A trespasser upon a fish preserve and private park, established and posted as prescribed by statute, who had knowledge that a night watchman employed to protect the fish from poachers was in the habit of discharging fire arms into the air in order to frighten off poachers, cannot recover for injuries received from a bullet fired from a rifle by the watchman, upon a dark night, in the direction of a noise made by such trespasser

and some companions in going through the woods while fishing and trespassing upon the park, and in an action brought by him against its owner and the watchman to recover for the injuries, it is reversible error for the trial court to refuse to charge, when requested by defendants, "that if the plaintiff knew that the watchman on the lake was in the habit of discharging a gun, and went there after receiving such information, he cannot recover, even if the defendants or either of them were negligent, and that if the plaintiff knew or had heard that the lake was generally protected by a watchman who had and discharged a gun, there could be no recovery;" since such request embodies the general rule that where the negligence or misconduct of the injured party is a contributing cause of the injury he cannot recover, even though negligence could be imputed to the defendants.

*Magar* v. *Hammond,* 54 App. Div. 532, reversed.

(Argued May 13, 1902; decided June 10, 1902.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 27, 1900, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry Bacon* and *George H. Carpenter* for appellants. Plaintiff was not only a trespasser, but he was a criminal engaged deliberately in the commission of crime. (Penal Code, § 640, subd. 12.) The acts proven do not constitute negligence as between these parties. (Cooley on Torts, 660; *Blyth* v. *Topham,* 3 Croke, 158; *Brock* v. *Copeland,* 1 Esp. 203; *Jordan* v. *Crump,* 8 M. & W. 781; *Bush* v. *Brainard,* 1 Cow. 78; *Robertson* v. *N. Y. & E. R. R. Co.,* 22 Barb. 91; *Baker* v. *Byrne,* 58 Barb. 438; *Roulston* v. *Clark,* 3 E. D. Smith, 366; *Boyle* v. *N. Y., L. E. & W. R. R. Co.,* 39 Hun, 171; 115 N. Y. 636; *Magilton* v. *N. Y. C. & H. R. R. R. Co.,* 82 Hun, 308; *McNeven* v. *Arnott,* 4 App. Div. 133.) Plaintiff was guilty of contributory negligence. (*Munger* v. *T. R. R. Co.,* 5 Den. 255; 4 N. Y. 349; *Terry* v. *N. Y. C. & H. R. R. R. Co.,* 22 Barb. 574; *Graham* v. *D. & H. C. Co.,* 46 Hun, 386; *Van Norden* v. *Robinson,* 45 Hun, 567;

*Vosbefskey* v. *H., etc., Co.,* 21 App. Div. 168; *Stewart* v. *Ferguson,* 52 App. Div. 317; *Jetter* v. *N. Y. & H. R. R. Co.,* 2 Keyes, 154; *Lewis* v. *L. I. R. R. Co.,* 162 N. Y. 52; *Bosworth* v. *Swansea,* 10 Metc. 363; *Hiland* v. *City of Lowell,* 3 Allen, 407.) The injury was entirely accidental, and not the necessary or probable result of the shooting. (*Hope* v. *F. B. C. Co.,* 3 App. Div. 70; *Beetz* v. *City of Brooklyn,* 10 App. Div. 382; *Hubbell* v. *Yonkers,* 104 N. Y. 434; *Jex* v. *Straus,* 122 N. Y. 293; *Glasier* v. *Town of Hebron,* 131 N. Y. 447; *Fraser* v. *Freeman,* 43 N. Y. 566; *Isaacs* v. *T. A. R. R. Co.,* 47 N. Y. 122; *Vanderbilt* v. *R. T. Co.,* 2 N. Y. 479; *Mali* v. *Lord,* 39 N. Y. 381; *Wright* v. *Wilcox,* 19 Wend. 343; *Meehan* v. *Morewood,* 52 Hun, 566; *Fisher* v. *Brooklyn Club,* 50 App. Div. 446.)

*Thomas Watts* and *William Vanamee* for respondent. This court has no jurisdiction to review the case. (Code Civ. Pro. § 191; *Szuchy* v. *Hillside Coal & Iron Co.,* 150 N. Y. 223; *Reed* v. *McCord,* 160 N. Y. 330; *McGuire* v. *Bell T. Co.,* 167 N. Y. 208.) The law governing the relation of master and servant was very clearly and correctly expounded to the jury by the trial court. (*Isaacs* v. *T. A. R. R. Co.,* 47 N. Y. 122; *Cosgrove* v. *Ogden,* 49 N. Y. 257; *Cohen* v. *R. R. Co.,* 69 N. Y. 170; *Hoffman* v. *N. Y. C., etc., R. R. Co.,* 87 N. Y. 25; *Quinn* v. *Power,* 87 N. Y. 535; *Lang.* v. *N. Y., L. E. & W. R. R. Co.,* 51 Hun, 603; *McCann* v. *R. R. Co.,* 117 N. Y. 505; *Palmeri* v. *M. R. Co.,* 133 N. Y. 261; *Montgomery* v. *Sartirano,* 16 App. Div. 95; *Levy* v. *Ely,* 48 App. Div. 454.) The fact that the plaintiff was a trespasser does not add to or take from the liability of the defendants. (Buswell on Personal Injuries, § 71; S. & R. on Neg. § 720; *Larmore* v. *C. P. I. Co.,* 101 N. Y. 394; *Woodbridge* v. *Marks,* 17 App. Div. 144; *Amato* v. *S. A. R. R. Co.,* 59 N. Y. S. R. 674; *Baber* v. *B. & S. A. R. R. Co.,* 62 N. Y. S. R. 467; *Palmer* v. *Gordon,* 53 N. E. Rep. 909; *Herrick* v. *Wixon,* 80 N. W. Rep. 117; *Clark* v. *Railroad Co.,* 40 Hun, 605; 113 N. Y. 670.)

O'BRIEN, J.   There is very little dispute with respect to the leading and important facts of this case, but the rule of law to be applied to the facts is not so clear.   The defendant Hammond and his servant have been sued jointly in an action based upon a personal injury that the plaintiff sustained resulting from the servant's negligence, as is claimed.   The jury rendered a verdict for the plaintiff of $15,000 and the judgment has been unanimously affirmed below.

In the year 1893 Hammond purchased over three hundred acres of wild forest land in Sullivan county.   By damming up small streams or springs and other operations he created an artificial lake upon the property of considerable dimensions. There was some low land free from timber which it seems furnished a natural bed for the lake, and it was surrounded by a dense growth of timber and bushes.   Having created the lake he proceeded to stock it with trout.   It seems that it was impossible for the fish to get into the lake through the dams on the surrounding springs or streams, but the fish were propagated by artificial means, and it became an industry that produced some revenue to the owner by selling the trout and permitting people to fish there for a compensation.   He also built a house, boathouse and hatchery for trout spawn, in which it is said two million of the same were produced annually.   He had to employ men to attend to the hatchery and otherwise in and about the property, and to prevent vermin from destroying the eggs.   He prepared and posted notices around the tract to warn off trespassers, as prescribed by the statutes of the state.

The owner's co-defendant in this action was the night watchman, whose business it was to be on the lake at night to protect the fish from poachers and wild animals that frequently came to the place to take the fish.   The owner had two guns, one a shotgun and the other a rifle.   The watchman had been in the habit of carrying one or the other of the guns with him when on the lake in a boat for the purpose of killing muskrats, mink and other animals about the lake.   He sometimes fired into the air in order to frighten off poachers.   On

the 9th day of June, 1899, the plaintiff and two other young men went to the lake to take fish, and were there after ten o'clock in the evening, the night being very dark. They did some fishing and retired into the thick woods on the shore. It does not appear that the watchman had seen them or knew that they had been fishing, but the crackling of the brush in the woods indicated to him that some one was there, or at least the jury could have so found. There is no claim that the watchman knew that the plaintiff was · in the woods, but there was some evidence tending to show that he knew or should have known that some human being was there, and the verdict affirms this proposition. The watchman had the rifle, and on hearing the noise in the woods fired at least three shots in the direction, and one of the bullets struck the plaintiff in the hip, inflicting a very serious if not permanent injury. The master was not present and knew nothing of the transaction, but he did know that the guns were on the premises and that the watchman was accustomed to use them in the manner and for the purposes described, and if he is responsible at all for the act of the servant it must be implied from these facts.

There were several propositions decided by the learned trial judge at the close of the case, which for all the purposes of this appeal must be treated as the law of the case. He ruled that there was no question for the jury and it could not be found that the shooting was willful or malicious, and the only question was whether the watchman was negligent and the owner responsible for such negligence. He instructed the jury that the plaintiff was guilty of a crime in going upon the defendant's premises to fish in the manner described, and that the defendant owed him no duty except to refrain from intentionally doing him an unnecessary injury or an injury through wanton or reckless negligence ; that the owner gave no express authority to the watchman to shoot at any human being, but on the contrary ordered him not to shoot at any human being, and that there was no evidence that it was within the scope of his employment to so shoot ; that there was no evidence in the case that either of the defendants

intended or desired to injure any human being or expected
that the shooting would result in such injury. The theory
upon which the case was submitted to the jury will clearly
appear by the following passage from the charge :

"Now the question which I will leave to you in this case,
gentlemen, is this, and I hope you will understand it : Did
this man Tompkins, when he fired in the night and into the
woods as he did, have reason to believe that there were human
beings there, or did he in fact know they were there ? Did
he know, when he fired into the woods as he did, that human
beings were where he fired, or by the exercise of ordinary
care could he have ascertained from what has been described
here as having happened, that human beings were there, and
knowing they were there, or having the ability to find out by
the exercise of ordinary care, did he, notwithstanding that,
wantonly, recklessly, fire in the direction where these human
beings were ? That is the vital question in this case. Because,
as I have stated, this defendant had a right to have a watch-
man. The watchman had a right to have a gun. He had a
right to have a rifle loaded with a bullet. He had a right to
fire his gun in the night anywhere and as often as he pleased
on his own land. But did Tompkins, when he fired on that
occasion, know he was firing where there were human beings,
or in the immediate proximity of where there were human
beings, and knowing that, or being able to find it out by the
exercise of ordinary care, did he still, recklessly and wantonly,
discharge his bullet in the direction where these human beings
were ? "

It will be seen that the learned judge excluded from the
jury very important elements tending to support the plain-
tiff's case. Willfulness, malice, intention to injure or desire
or motive to do so, express authority from the owner and
perhaps other elements were eliminated from the case. It
is not very plain how the jury could, with all these ele-
ments excluded, have found that the shooting was wanton
or reckless, assuming always that the watchman had the right
to do all the things that the court held that he had, but it is

quite likely that the form in which the case comes here precludes any discussion in this court upon that question. There is, however, an exception in the case that we think is fatal to the judgment.

The defendants' counsel asked the court to instruct the jury that if the plaintiff knew that the watchman on the lake was in the habit of discharging a gun and went there after receiving such information he cannot recover, even if the defendants or either of them were negligent, and that if the plaintiff knew or had heard that the lake was generally protected by a watchman who had and discharged a gun, there could be no recovery. The court refused to so charge, and the defendants' counsel excepted. This request embodied the general rule that where the negligence or misconduct of the injured party is a contributing cause of the injury he cannot recover, even though negligence could be imputed to the defendants. With all the elements to which reference has been made excluded from the case, the defendants were entitled to have the jury instructed that if the plaintiff voluntarily exposed himself to a known danger he could not recover for the act of the watchman, though this act, in defense of the master's property, was without due care, and that is the fair construction of the request. There was proof in the case, aside from the statutory notices warning intruders, which every one could see, that the plaintiff knew what other precautions the defendants had adopted for the protection of their property, including the use of firearms, and since the proposition amounted to a request to apply the general rule of law to these facts it was not a mere abstract one, but was applicable to the proofs in the case, and should have been given to the jury. It follows that the judgment must be reversed and a new trial granted, costs to abide the event.

PARKER, Ch. J., GRAY, HAIGHT and VANN, JJ. (BARTLETT, J., in result), concur; MARTIN, J., not voting.

Judgment reversed.